No. 23-1328
——————————————————————
United States Court of Appeals
for the Eighth Circuit
——————————————————————

Dexon Computer, Inc.,

*Plaintiff/Appellee,*

v.

Travelers Property Casualty Co. of America,

*Defendants/Appellant.*

——————————————————————

Appeal from the United States District Court for the District of Minnesota
The Honorable Patrick J. Schiltz
Case No. 21-cv-01498 (PJS/DTS)

——————————————————————

**BRIEF OF PLAINTIFF/APPELLEE
DEXON COMPUTER, INC.**

——————————————————————

Michael M. Lafeber (#242871)
Scott M. Flaherty (#0388354)
O. Joseph Balthazor Jr. (#0399093)
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center, 80 South Eighth St.
Minneapolis, MN 55402-2157
(612) 977-8400
mlafeber@taftlaw.com
sflaherty@taftlaw.com
jbalthazor@taftlaw.com

*Attorneys for Plaintiff-Appellee*

## SUMMARY AND REQUEST FOR ORAL ARGUMENT

On July 22, 2020, Cisco Systems, Inc. and Cisco Technology, Inc. ("Cisco") filed a lawsuit against Appellee Dexon Computer, Inc. ("Dexon") alleging trademark infringement. Dexon timely tendered the matter to its insurer Appellant Travelers Property Casualty Co. of America ("Travelers"). Travelers acknowledged the lawsuit alleges trademark infringement occurring within the policy period and that such claims are expressly covered under the policy. However, Travelers denied coverage based on a "related acts" exclusion. Namely, Travelers contends the allegations in Cisco's underlying complaint, standing alone, satisfy the "related acts" exclusion and rendered all undeniably covered claims as having occurred prior to the applicable policy period.

Dexon was forced to file this declaratory judgment action to establish coverage. Travelers filed a motion to dismiss that was denied by the United States District Court for the District of Minnesota, the Honorable Patrick J. Schiltz presiding. Judge Schiltz correctly determined that the underlying Cisco complaint, standing alone, does not satisfy the "related acts" exclusion as a matter of law. Judge Schiltz's determination is supported by the record and well-established case law and should be affirmed.

Dexon concurs with Travelers' request for 15 minutes of oral argument per side.

Appellate Case: 23-1328     Page: 2     Date Filed: 06/27/2023 Entry ID: 5290364

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed. R. App. P. 26.1, Dexon states that (1) it has no parent corporation and (2) no publicly held corporation owns 10% or more of its membership interests.

Appellate Case: 23-1328    Page: 3    Date Filed: 06/27/2023 Entry ID: 5290364

# TABLE OF CONTENTS

SUMMARY AND REQUEST FOR ORAL ARGUMENT........................................i

CORPORATE DISCLOSURE STATEMENT ........................................ ii

TABLE OF AUTHORITIES ........................................iv

JURISDICTIONAL STATEMENT ........................................1

STATEMENT OF ISSUES ........................................2

STATEMENT OF THE CASE........................................3

    A.    Dexon a "Middleman" Secondary Market Reseller............................3

    B.    The Travelers' "CyberFirst Liability Policy" ........................................3

    C.    Cisco's Trademark Infringement Lawsuit Against Dexon ................4

    D.    Travelers' Wrongful Reliance on "Related Acts" Exclusion..............5

        1.    Separate and Independent Alleged Wrongful Acts ..................6

        2.    Vague and Unsupported "Scheme" Allegations........................7

    E.    Procedural Posture - Denial of Rule 12(b)(6) Motion to Dismiss .....10

ARGUMENT ........................................12

I.    The District Court Properly Denied Travelers' Motion to Dismiss on the Ground the Current Record Fails to Establish Infringement Allegations "Related" as a Matter of Law under "Related Acts" Exclusion. ........................................12

    A.    Standard of review........................................12

    B.    "Related" Determination Inappropriate at Rule 12(b)(6) Stage ........14

    C.    Infringement Allegations Not Related as a Matter of Law...............19

        1.    "Related" Requires More than "Same Claim Same Parties"........................................19

        2.    Travelers' "Macro-Grouping" Inappropriate...........................21

    D.    Travelers' Reliance on Sletten Misplaced.........................................24

CONCLUSION ........................................27

CERTIFICATE OF BRIEF LENGTH ........................................28

Appellate Case: 23-1328    Page: 4    Date Filed: 06/27/2023 Entry ID: 5290364

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## Cases

*Allied Ins. Co. v. Bach*,
    No. 05-cv-5945, 2007 WL 627635 (N.D. Ill. Feb. 27, 2007)............................26

*Am. Cas. Co. of Reading, Pennsylvania v. Allen*,
    No. 2:12-cv-2414, 2015 WL 5693598 (N.D. Ala. Sept. 29, 2015) ....................15

*Am. Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co.*,
    551 N.W.2d 224 (Minn. 1996) .....................................................................*passim*

*Auto-Owners Inc. C. v. Todd*,
    547 N.W.2d 696 (Minn. 1996) ..........................................................................12

*Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*,
    5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993)...........................16, 17

*Biochemics, Inc. v. Axis Reinsurance Co.*,
    963 F. Supp. 2d 64 (D. Mass. 2013).................................................................16

*Bridge Metal Indus., L.L.C. v. Travelers Indem.* ....................................................26

*Brown v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
    No. 02-cv-4724(DWF/SRN), 2004 WL 292158 (D. Minn. Feb. 11,
    2004) ............................................................................................................2, 15, 22

*Christ Lutheran Church By & Through Matthews v. State Farm Fire
    & Cas. Co.*,
    471 S.E.2d 124, *aff'd*, 477 S.E.2d 33 (1996).....................................................16

*Connect Am. Holdings, LLC v. Arch Insurance Company*,
    174 F. Supp. 3d 894 (E.D. Penn. 2016)...........................................................2, 24

*Cont'l Ins. Co. v. Daikin Applied Americas Inc.*,
    998 F.3d 356 (8th Cir. 2021) .............................................................................27

*Eagle Tech. v. Expander Ams., Inc.*,
    783 F.3d 1131 (8th Cir. 2015) ...........................................................................25

Appellate Case: 23-1328    Page: 5    Date Filed: 06/27/2023    Entry ID: 5290364

*Farmers Ins. Exch. v. Hallaway*,
    564 F. Supp. 2d 1047 (D. Minn. 2008)................................................................16

*Foster v. Summit Med. Sys., Inc.*,
    610 N.W.2d 350 (Minn. App. 2000) ...................................................................16

*Freeman Investments, L.P. v. Pacific Life Ins. Co.*,
    704 F.3d 1110 (9th Cir. 2013) ..........................................................................27

*G-I Holdings v. Hartford Fire Ins. Co.*,
    No. 00-cv-6189, 2007 WL 842009 (D.N.J. Mar. 16, 2007)...............................14

*Garvis v. Emps. Mut. Cas. Co.*,
    497 N.W.2d 254 (Minn. 1993) ..........................................................................13

*Gladstone v. Westport Ins. Corp.*,
    No. 10-cv-652, 2011 WL 5825985 (D.N.J. Nov. 16, 2011)...............................14

*Hanover Ins. Co. v. TMP Int'l, Inc.*,
    No. 4:04-cv-668, 2006 WL 176105 (E.D. Mo. Jan. 24, 2006)...........................18

*Jostens, Inc. v. Mission Ins. Co.*,
    387 N.W.2d 161 (Minn. 1986) ....................................................................13, 14

*Kilcher v. Cont'l Cas. Co.*,
    747 F.3d 983 (8th Cir. 2014) ............................................................................16

*Prahm v. Rupp Const. Co.*,
    277 N.W.2d 389 (Minn. 1979) ..........................................................................27

*Rancho Tehama Ass'n. v. Fed. Ins. Co.*,
    No. 2:15-cv-00291, 2015 WL 3454610 (E.D. Cal. May 29, 2015) ...................15

*Rest. Recycling, LLC v. Emp. Mut. Cas. Co.*,
    922 F.3d 414 (8th Cir. 2019) ............................................................................13

*RQ Const., Inc. v. Exec. Risk Indem., Inc.*,
    No. 13-cv-1360, 2014 WL 654619 (S.D. Cal. Feb. 18, 2014) .....................15, 17

*Sletten & Brettin Orthodontics, LLC v. Contintental Casualty Co.*,
    782 F.3d 931 (8th Cir. 2015) ........................................................................25, 26

Appellate Case: 23-1328    Page: 6    Date Filed: 06/27/2023 Entry ID: 5290364

*St. Paul Fire & Marine Ins. Co. v. Nat'l Computer Sys., Inc.*,
    490 N.W.2d 626 (Minn. App. 1992), *review denied* (Minn. Nov.
    17, 1992) ..................................................................................12, 13

*Thompson v. Harrie*,
    59 F.4th 923 (8th Cir. 2023) ...............................................................12

*Tile Shop Holdings, Inc. v. Allied World Nat'l Assurance Co.*,
    No. 17-cv-776, 2019 WL 2357044 (D. Minn. June 4, 2019), *aff'd*,
    981 F.3d 655 (8th Cir. 2020) ...............................................................14

*U.S. Specialty Ins. Co. v. AT & T Corp.*,
    No. 10-cv-0205(GEB-D), 2010 WL 3430527 (D.N.J. Aug. 27,
    2010) ..................................................................................................14

*UnitedHealth Grp. Inc. v. Columbia Cas. Co.*,
    No. 05-cv-1289(PJS), 2010 WL 317521 (D. Minn. Jan. 19, 2010) .............16, 20

*UnitedHealth Grp. Inc. v. Hiscox Dedicated Corp. Member Ltd.*,
    No. 09-cv-0210, 2010 WL 550991 (D. Minn. Feb. 9, 2010) ...........................17

*Westfield Ins. Co. v. Kroiss*,
    694 N.W.2d 102 (Minn. App. 2005) ........................................................18

*Zean v. Fairview Health Servs.*,
    858 F.3d 520 (8th Cir. 2017) ...............................................................12

## Statutes

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. §1332(a)(1) .................................................................................1

Wrongful Act ............................................................................................17

## Other Authorities

Fed. R. App. P. 26.1 .................................................................................. ii

Fed. R. Civ. App. P. 4(a)(1) .........................................................................1

Federal Rule of Civil Procedure 12(b)(6) ........................................................*passim*

Appellate Case: 23-1328    Page: 7    Date Filed: 06/27/2023 Entry ID: 5290364

## JURISDICTIONAL STATEMENT

Travelers appeals from the July 11, 2022 denial of its motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and resulting January 25, 2023 stipulated final judgment entered by the United States District Court for the District of Minnesota, the Honorable Patrick J. Schiltz presiding. App. 1; R.Doc. 23, at 1; App. 15; R.Doc. 34, at 1. The district court had subject matter jurisdiction pursuant to 28 U.S.C. §1332(a)(1) there being complete diversity between the parties and the amount in controversy exceeding $75,000. App. 23; R.Doc. 1, at 2. Travelers filed its Notice of Appeal on February 15, 2023. Fed. R. Civ. App. P. 4(a)(1). This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

1

# STATEMENT OF ISSUES

1. **Did the District Court Properly Deny Travelers' Motion to Dismiss on the Ground the Current Record Fails to Establish Infringement Allegations "Related" as a Matter of Law Under "Related Acts" Exclusion?**

**Most Apposite Cases:**

- *Am. Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co.,* 551 N.W.2d 224, 227 (Minn. 1996)

- *Brown v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 02-cv-4724(DWF/SRN), 2004 WL 292158, at *3 (D. Minn. Feb. 11, 2004)

- *Connect Am. Holdings, LLC v. Arch Insurance Company*, 174 F. Supp. 3d 894, 902-03 (E.D. Penn. 2016)

2

**A.** **Dexon a "Middleman" Secondary Market Reseller**

Dexon has been selling computer networking products for more than twenty-eight years. App. 23 ¶ 8; R.Doc. 1, at 2. It sells the highest quality new and used equipment from name brands such as Cisco, Hewlett Packard, Juniper, and Dell. *Id.*

Dexon does not manufacture or produce the networking products it sells. App. 29 ¶ 28; R.Doc. 1, at 8. Nor does it source such products from a single or limited set of suppliers. App. 23 ¶ 9; R.Doc. 1, at 2. Rather, Dexon is a "middle man" reseller that sources its products, including the Cisco products at issue, from literally thousands of different suppliers, including authorized and or licensed Cisco partners. App. 29 ¶ 28; R.Doc. 1, at 8. Dexon subjects such products to extensive quality control measures, including taking proactive steps to detect and prevent the sale of counterfeit products. App. 23 ¶ 9; R.Doc. 1, at 2.

**B.** **The Travelers' "CyberFirst Liability Policy"**

The applicable Travelers' CyberFirst Liability Policy" issued to Dexon ("Cyber Policy") provides a broad grant of coverage for any "communications and media wrongful act" alleged to have occurred on or after the effective May 18, 2019 policy period. The Cyber Policy provides in relevant part:

    a.    We will have the right and duty to defend the insured against any:

        (1)    'Claim' or 'suit' seeking 'damages'; or

Appellate Case: 23-1328　　Page: 10　　Date Filed: 06/27/2023 Entry ID: 5290364

(2)    'Suit' seeking injunctive relief;

for loss to which the insurance provided under one or more of 'your CyberFirst liability coverage forms' applies. . .

App. 24 ¶ 11; R.Doc. 1, at 3; App. 107; R.Doc. 8-3, at 18.

Travelers' applicable "Communications and Media Liability Coverage Form" is part of Dexon's Cyber Policy. App. 24 ¶ 12; R.Doc. 1, at 3; App. 122; R.Doc. 8-3, at 33. Travelers acknowledges such form expressly provides coverage for trademark infringement allegations and claims. App. 25 ¶ 14; R.Doc. 1, at 4; App. 124; R.Doc 8-3, at 35. The form provides in relevant part:

4.    'Communications and media wrongful act' means any of the following committed by or on behalf of an insured in the conduct of your business:

\* \* \*

b.    Infringement of copyright, 'title', 'slogan', trademark, trade name, trade dress, service mark or service name in your 'covered material'.

*Id.* It is also undisputed the policy period for such covered trademark infringement claims commenced May 18, 2019. App. 25 ¶ 13; R.Doc. 1, at 4; App. 122; R.Doc. 8-3, at 33.

## C.   Cisco's Trademark Infringement Lawsuit Against Dexon

On July 22, 2020, Cisco filed an action against Dexon in United States District Court for the Northern District of California, *Cisco Systems, Inc., et al. v. Dexon Computer, Inc.*, 3:20-cv-4926 ("Underlying Litigation") alleging trademark infringement. App. 35. Namely, Cisco asserted trademark infringement counts based

on Dexon having allegedly "sold, offered to sell, distributed, and advertised infringing products bearing Cisco marks" that were not "manufactured by Cisco, or under its authority." App. 41 ¶ 24; R.Doc 8-1, at 6; App. 50 ¶ 57; R.Doc. 8-1, at 15.

## D. Travelers' Wrongful Reliance on "Related Acts" Exclusion

Dexon timely tendered the original complaint in the Underlying Litigation to Travelers. App. 20; R.Doc. 36, at 2; App. 267; R.Doc. 14-4, at 2. Travelers acknowledged the original complaint included covered trademark infringement allegations during the policy period. *Id.* However, Travelers wrongfully denied its duty to defend by improperly relying on a "related acts" exclusion. *Id.* Namely, Travelers contended the covered policy period allegations were "related" to pre-policy period allegations and therefore deemed to have been committed prior to the applicable policy period. App. 27 ¶ 21; R.Doc. 1, at 6.

Travelers relied on Communications and Media Liability Coverage Form Section I(1)(b), which provides that communications and media wrongful acts in a "series of 'related'" wrongful acts will be deemed committed on the date of the first wrongful act. The section provides:

> Each 'communications and media wrongful act' in a series of 'related' 'communications and media wrongful acts' will be deemed to have been committed on the date the first 'communications and media wrongful act' in that series is committed.

App. 27 ¶ 22; R.Doc. 1, at 6; App. 122; R.Doc. 8-3, at 33.

5

"Related" is a defined term in the applicable policy meaning "connected, tied, or linked by any fact, circumstance, situation, event, transaction, cause or series of related facts, circumstances, situations, events, transactions or causes." App. 28 ¶ 23; R.Doc. 1, at 7; App. 120; R.Doc. 1, at 31.

### 1. Separate and Independent Alleged Wrongful Acts

Although evident from the original complaint in the Underlying Litigation that the policy period trademark infringement allegations involved separate and independent transactions, Dexon's March 19, 2021 follow-up letter to Travelers provided additional information further confirming the policy period infringement allegations were not "related." App. 269; R.Doc. 14-4, at 4. Namely, to the extent Travelers denial was based on erroneous assumptions Dexon was manufacturing equipment, obtaining its product from a single suspect supplier, or continuing to sell from a static inventory of suspect product, Dexon clarified that it utilized over a thousand different reputable suppliers. *See id.* ("[Dexon] sources its products, including the Cisco products at issue, from literally thousands of different suppliers.").

In fact, as explained to Travelers, the four alleged policy period wrongful acts alleged in the original complaint involved different products that were all sourced from completely separate and unrelated suppliers *Id.* Moreover, the original complaint "[did] not allege Dexon received any prior claim from Cisco involving

6

product originating from the [suppliers of the policy period products]" and "Dexon [had] received no such claims and had absolutely no reason to be concerned about product sourced from such suppliers." App. 270; R.Doc. 14-4, at 5. In fact, Dexon explained that "it had been doing business with such suppliers for years" including "selling products sourced from [one of the suppliers for] 20+ years." *Id.*

Cisco subsequently filed a first amended complaint in the Underlying Litigation that identified nine additional new policy period allegations. App. 171; R.Doc. 14-1, at 2. Dexon tendered the first amended complaint to Travelers on May 5, 2021. App. 272; R.Doc. 14-5, at 2. With respect to the new policy period allegations, Dexon again explained that: i) they "involve[d] separate, distinct, independent transactions involving completely different products and suppliers"; and ii) "Dexon had absolutely no reason to be concerned about product sourced from [the subject] suppliers." App. 273; R.Doc. 14-5, at 3.

### 2. Vague and Unsupported "Scheme" Allegations

Despite the clear separate and independent nature of the alleged policy period allegations, Travelers contended they were related based on vague and unsupported references to an alleged counterfeiting "scheme" in the Underlying Litigation. *See* App. 59 ¶ 1; R.Doc. 8-2, at 2 ("Dexon's counterfeit trafficking scheme"); App. 65 ¶ 24; R.Doc. 8-2, at 8 ("Dexon has repeatedly . . . engaged in schemes to traffic counterfeit Cisco products."); App. 68 ¶ 34; R.Doc. 8-2, at 11 ("Dexon has continued

7

to engage in a scheme to sell counterfeit Cisco products."). However, the Underlying Litigation is completely devoid of any specific allegations or facts supporting an alleged "scheme." *Id.* Rather, it alleges multiple separate, distinct, and independent sales of different types of Cisco products over an approximate 15-year time period. *Id.*

For example, the first amended complaint in the Underlying Litigation begins by referencing separate transactions involving different customers and different Cisco products alleged to be counterfeit during the period 2006-2010. App. 59–68; R.Doc. 8-2, at 2-11. These allegations were all included in a prior lawsuit brought by Cisco against Dexon in 2011. App. 233; R.Doc. 14-2, at 2. Such allegations were all dismissed with prejudice on December 8, 2011, without Cisco ever establishing or proving such products were in fact counterfeit or that Dexon had committed any trademark infringement. App. 264; R.Doc. 14-3, at 2.

What follows in the Underlying Complaint are not facts or allegations supporting an alleged "scheme" but rather further allegations of separate, independent transactions involving different products, different suppliers and different customers. App. 65; R.Doc. 8-2 at 8. Noticeably absent are any allegations Dexon manufactured counterfeit equipment, continued to sell from an inventory of equipment determined to be counterfeit, or continued to work with a supplier known to be supplying counterfeit equipment. *See generally id.*

8

Contradicting any ongoing "scheme" to sell counterfeit Cisco equipment, the first amended complaint in the Underlying Litigation contains a seven-year gap from the alleged 2010 sale of counterfeit equipment (which allegations were dismissed with prejudice in 2011), until Dexon was again notified by Cisco in 2017 that product purportedly sold by Dexon had allegedly been determined by Cisco to be counterfeit. App. 67 ¶ 33; R.Doc. 8-2, at 10; App. 68 ¶ 38; R.Doc. 8-2, at 11.

In fact, the products alleged to be counterfeit by Cisco represent a de minimis portion of the Cisco products sold by Dexon over the relevant period.[1] To the extent any of the Cisco product at issue in the underlying litigation is ultimately determined to be counterfeit, Dexon is merely the innocent "middleman" victim of the fact that counterfeit Cisco products exist in the stream of commerce. App. 29 ¶ 28; R.Doc. 1 at 8. For example, Cisco's own value added resellers and channel partners are also unfortunately victimized by the prevalence of counterfeit Cisco products. App. 274; R.Doc. 14-6, at 2.

---

[1] As explained by Judge Schiltz, "And I get the point you make in your brief. This is a high volume reseller. It buys from thousands of people. It sells to thousands of people. You can't conduct this business without sometimes running across counterfeit products. They're ubiquitous out there…Target is going to sell counterfeit products. It just happens if you sell enough products." Dexon's counsel responded, "My advocate DNA wants to get up here and reiterate all those points, and I don't feel the need to do that. I was prepared to show you the math and [point out Travelers claims] these alleged 50 sales over 13 years constitutes a scheme. I wanted to break that down and show you how de minimis that is. I won't do that. You get it." App. 332; R.Doc. 41, at 40, App. 333; R.Doc. 41, at 41.

Appellate Case: 23-1328    Page: 16    Date Filed: 06/27/2023 Entry ID: 5290364

### E.  Procedural Posture - Denial of Rule 12(b)(6) Motion to Dismiss

As a result of Travelers' continued wrongful denial of its duty to defend, Dexon was forced to commence the present insurance coverage action.

Travelers brought a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). App. 2. Travelers argued that the district court could determine that all policy period covered allegations are "related" to pre-policy period allegations *as a matter of law*. The Court denied Travelers' motion on the ground that genuine issues of material fact exist as to whether the allegations are "related." App. 14. The Court correctly explained that "[a]t this point in the litigation, the Court finds that it cannot rule as a matter of law that each and every act of trademark infringement alleged in the Cisco Action is 'related' to an act of trademark infringement that occurred prior to the Retroactive Date." App. 7. According to the Court, it "could not conclude – based on the allegations in the Cisco complaint and the facts made available to Travelers – that a jury must find that *every* act of trademark infringement alleged in the Cisco complaint is 'related' to an act of infringement that occurred prior to the Retroactive Date" and "[a]ccordingly. . .denies Travelers' motion to dismiss this coverage action." App. 7; R.Doc. 23, at 7, App. 14; R.Doc. 23, at 14 (emphasis in original).

The district court relied on and was careful to point out the absence of "factual support in the [underlying] complaint" for the alleged "scheme." App. 11; R.Doc.

10

23, at 11. The district court expounded that "[t]he complaint says little or nothing about how Dexon obtained each of the allegedly counterfeit products, why Dexon must have known each of the products was in fact counterfeit, or how each of the allegedly infringing acts was related to other allegedly infringing acts. And thus, the complaint says little or nothing to support Cisco's allegation that all of the alleged acts of infringement were part of one or another long-running 'scheme.'" App. 13; R.Doc. 23, at13.

Judge Schiltz summarized as follows, "In short, Travelers has denied Dexon a defense based on allegations in the Cisco complaint that are supported by few facts in the complaint, that are largely irrelevant to the Cisco action, and that are substantially undermined by the facts provided to Travelers by Dexon."[2] *Id.*

Travelers disagrees with the district court's well-reasoned analysis and now appeals the denial of its motion to dismiss.

---

[2] In addition to the facts outlined above, the district court's decision further noted additional facts provided by Dexon showing that "no matter how careful it is, it simply cannot guarantee the authenticity of every single one of the many thousands of products it sells each year [and] [t]hat is particularly true with respect to Cisco products, because Cisco refused to provide resellers with the tools they need to be certain that they do not sell counterfeit products." App. 10 n.4; R.Doc. 23, at 10 (citations omitted).

11

## ARGUMENT

**I.**     **The District Court Properly Denied Travelers' Motion to Dismiss on the Ground the Current Record Fails to Establish Infringement Allegations "Related" as a Matter of Law under "Related Acts" Exclusion.**

### A.     Standard of review

This court reviews de novo a district court's decision on a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "accepting as true all factual allegations and viewing them in the light most favorable to the nonmoving party." *Thompson v. Harrie*, 59 F.4th 923, 926 (8th Cir. 2023). A district court's interpretation of state law is likewise reviewed de novo. *Id.*

On a motion to dismiss, a court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).[3]

The duty to defend an insured is broader than the duty to indemnify. *Auto-Owners Inc. C. v. Todd*, 547 N.W.2d 696, 698 (Minn. 1996); *St. Paul Fire & Marine Ins. Co. v. Nat'l Computer Sys., Inc.*, 490 N.W.2d 626, 631 (Minn. App. 1992),

---

[3] The district court considered certain documents submitted by the parties, including Cisco's original and first amended complaints, Dexon's Answer to the Cisco complaint, the CyberFirst Policy, and letters Dexon sent to Travelers. The district court explained that "all of these documents were referred to, cited, or quoted in Dexon's complaint, and thus they are not matters outside the pleadings." App. 5; R.Doc. 23, at 5. Travelers does not challenge the district court's reliance on those documents.

*review denied* (Minn. Nov. 17, 1992). The duty to defend a claim against an insured "arises when any part of the claim is '***arguably***' within the scope of the policy's coverage." *Jostens, Inc. v. Mission Ins. Co.*, 387 N.W.2d 161, 165 (Minn. 1986) (emphasis added).

An insurer's duty to defend is not determined exclusively by the facts of the underlying complaint. *St. Paul Fire & Marine*, 490 N.W.2d at 631 (citing *Lanoue v. Firemans Fund Am. Ins. Co.*, 278 N.W.2d 49, 53 (Minn. 1979), *overruled on other grounds by Am. Standard Ins. Co. v. Le*, 551 N.W.2d 923, 927 (Minn. 1996)). Rather, if the insurer is aware of facts outside the underlying complaint that establish coverage or the inapplicability of an exclusion, the insurer must defend. *Id.*; *see Garvis v. Emps. Mut. Cas. Co.*, 497 N.W.2d 254, 258 (Minn. 1993) ("[I]f the insurer is aware of facts indicating that there may be a claim, either from what is said directly or inferentially in the complaint, or if the insured tells the insurer of such facts, or if the insurer has some independent knowledge of such facts, then the insurer must either accept tender of the defense or further investigate the potential claim.").

Finally, the "insured party bears the initial burden of demonstrating coverage, and the insurer then bears the burden of establishing an applicable exclusion." *Rest. Recycling, LLC v. Emp. Mut. Cas. Co.*, 922 F.3d 414, 417 (8th Cir. 2019) (citing

Appellate Case: 23-1328     Page: 20     Date Filed: 06/27/2023 Entry ID: 5290364

*Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013)).[4] And an insurer who seeks to avoid the duty to defend has the "burden of showing that all parts of the cause of action fall clearly outside the scope of coverage." *Jostens*, 387 N.W.2d at 165-66.

## B.  <u>"Related" Determination Inappropriate at Rule 12(b)(6) Stage</u>

It is well-established that determining if claims are "related" is a fact-intensive inquiry generally inappropriate for determination at the Rule 12(b)(6) stage. *See U.S. Specialty Ins. Co. v. AT & T Corp.*, No. 10-cv-0205(GEB-D), 2010 WL 3430527, at *3 (D.N.J. Aug. 27, 2010) ("The Court concludes that whether the complaints in the prior litigations are sufficiently related to the complaint in the Williamson action to trigger insurance policy exclusions will involve questions of fact that are not properly resolved on a motion to dismiss. . . . While construction and interpretation of the insurance policy language is properly an issue of law for the court to decide,

---

[4] Dexon argued the "related acts" provision should be treated as an exclusion. *See Tile Shop Holdings, Inc. v. Allied World Nat'l Assurance Co.*, No. 17-cv-776, 2019 WL 2357044, at *5 (D. Minn. June 4, 2019) (applying Minnesota law) (treating related wrongful act provision as an exclusion to coverage), *aff'd*, 981 F.3d 655 (8th Cir. 2020); *Gladstone v. Westport Ins. Corp.*, No. 10-cv-652, 2011 WL 5825985, at *6 (D.N.J. Nov. 16, 2011) ("[Insurer] has the burden of proving that the inter-related wrongful act provision applies in this case because it operates as an exclusion."); *G-I Holdings v. Hartford Fire Ins. Co.*, No. 00-cv-6189, 2007 WL 842009, at *8 (D.N.J. Mar. 16, 2007) ("Plaintiffs correctly note that exclusionary clauses, like the 'interrelated wrongful acts' provision at issue here, are to be strictly construed against the insurer."). The district court did not rule on this issue because "its ruling would be the same no matter which party bears the burden of proof." App. 7 n.2; R.Doc. 23, at 7.

Appellate Case: 23-1328      Page: 21      Date Filed: 06/27/2023 Entry ID: 5290364

application of that language to the complex set of facts presented in this case is not proper on a motion to dismiss." (internal record citations omitted)).[5]

In fact, courts have found such fact-intensive analysis inappropriate even at the ***summary judgment*** stage upon a full record. In a case directly on point, a district court applying Minnesota law correctly declined to grant summary judgment on the issue of whether different fraud claims were related due to the fact-intensive nature of the inquiry. *Brown v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 02-cv-4724, 2004 WL 292158, at *3 (D. Minn. Feb. 11, 2004).

> In addition to the arguably four different methods of defrauding clients cited by [insurer] in its brief, counsel for [insurer] represented to the Court at oral argument on this matter that other types of actions that could be deemed different fraudulent methods, such as the churning of client's accounts, were alleged to have been committed by [insured]. Until the record is made clear as to the allegations against [insured] and the different types of activities that he allegedly engaged in with regard to his clients, a genuine issue of material fact remains as to whether the allegedly wrongful acts committed by [insured] were 'interrelated acts' as defined by the Policy. Thus, [insurer] is not entitled to summary judgment on this issue at this time.

*Id.*

---

[5] *Accord Rancho Tehama Ass'n. v. Fed. Ins. Co.*, No. 2:15-cv-00291, 2015 WL 3454610, at *3 (E.D. Cal. May 29, 2015) (denying motion to dismiss on issue of "relatedness" as premature); *RQ Const., Inc. v. Exec. Risk Indem., Inc.*, No. 13-cv-1360, 2014 WL 654619, at *10 (S.D. Cal. Feb. 18, 2014) (same); *Am. Cas. Co. of Reading, Pennsylvania v. Allen*, No. 2:12-cv-2414, 2015 WL 5693598, at *6 (N.D. Ala. Sept. 29, 2015) (same).

Travelers has failed to cite a ***single case*** where a district court granted a motion to dismiss on the fact-intensive relatedness question. On the contrary, the cases cited and relied on by Travelers all involve determinations based on a review of a complete record at the summary judgment stage. *See Am. Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire & Cas. Co.*, 551 N.W.2d 224, 227 (Minn. 1996) (analyzing "series of related act" exclusion on appeal from grant of summary judgment); *Foster v. Summit Med. Sys., Inc.*, 610 N.W.2d 350, 353 (Minn. App. 2000) (analyzing interrelated wrongful act exclusion on appeal from order on cross-motions for summary judgment); *Kilcher v. Cont'l Cas. Co.*, 747 F.3d 983, 988 (8th Cir. 2014) (analyzing wrongful act exclusion under Minnesota law on appeal from grant of summary judgment); *Farmers Ins. Exch. v. Hallaway*, 564 F. Supp. 2d 1047, 1054 (D. Minn. 2008) (applying *American Commerce* on summary judgment); *UnitedHealth Grp. Inc. v. Columbia Cas. Co.*, No. 05-cv-1289(PJS), 2010 WL 317521, at *11 (D. Minn. Jan. 19, 2010) (applying *American Commerce* on summary judgment); *Christ Lutheran Church By & Through Matthews v. State Farm Fire & Cas. Co.*, 471 S.E.2d 124, 125, *aff'd*, 477 S.E.2d 33 (1996) (deciding appeal from entry of judgment after pleadings stage and after parties filed stipulated facts).[6]

---

[6] *Accord Biochemics, Inc. v. Axis Reinsurance Co.*, 963 F. Supp. 2d 64, 70 (D. Mass. 2013) (denying early motion for summary judgment, reasoning that "Interrelated Wrongful Acts" determination "cannot be resolved until the parties have taken sufficient discovery."). Moreover, at least one federal district court has made it a point to clarify that "[t]he *Bay Cities* opinions don't make it clear, but the Court

Travelers' misleadingly cites *UnitedHealth Grp. Inc. v. Hiscox Dedicated Corp. Member Ltd.*, No. 09-cv-0210, 2010 WL 550991, at \*6-7 (D. Minn. Feb. 9, 2010) as having "adjudicat[ed] 'relatedness' of wrongful acts on motion dismiss." Appellant Brief at 17. This is inaccurate. The *Hiscox* Court was not asked or required to make any determination concerning the relatedness of alleged wrongful acts. *Id.* Rather, the parties stipulated or agreed that the alleged wrongful acts were related. *Id.* The issue before the Court was construction and application of the policy's "Antitrust Endorsement" in light of the stipulated "related" wrongful acts. *See id.* ("The parties agree that every unlawful use of the Ingenix databases was 'related' to every other unlawful use of the Ingenix databases. And thus, although every unlawful use of the Ingenix databases was a separate Wrongful Act, all of these Wrongful Acts '[arose] out of the same or related . . . breach of duty,' and thus, under § 4.17, all of these Wrongful Acts are 'deemed to be the same Wrongful Act.' The issue, though, is how this provision affects the analysis under the Antitrust Endorsement." (emphasis added)).

---

retrieved the docket from the case, and it went all the way to trial. That is where the relatedness of the claims at issue was resolved." *See RQ Const., Inc. v. Exec. Risk Indem., Inc.*, No. 13-cv-1360 (LAB/KSC), 2014 WL 654619, at \*10 (S.D. Cal. Feb. 18, 2014) (citing *Bay Cities Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co.*, 5 Cal.4th 854, 21 Cal.Rptr.2d 691, 855 P.2d 1263 (1993)); *see Am. Commerce*, 551 N.W.2d at 228 (relying heavily on *Bay Cities*).

Although unclear, to the extent Travelers is arguing that the duty to defend must always be determined as a matter of law based on a comparison of the complaint to the language of the complaint, it is wrong. There are multiple examples in addition to the "related acts" exclusion recognized as requiring a fact intensive inquiry not well-suited for determination on a motion to dismiss. *See Hanover Ins. Co. v. TMP Int'l, Inc.*, No. 4:04-cv-668, 2006 WL 176105, at *2 (E.D. Mo. Jan. 24, 2006) (denying motion to dismiss claim for declaratory judgment on duty to defend "because it require[d] factual findings that are inappropriate at this stage of the proceedings"); *see also Westfield Ins. Co. v. Kroiss*, 694 N.W.2d 102, 106 (Minn. App. 2005) ("Generally where questions of fact need to be discovered to determine if an insurer has a duty to indemnify, a duty to defend exists.").

In the present case, Judge Schiltz correctly determined, consistent with the well-established case law, that he was unable to determine the alleged pre- and post-policy acts of infringement are "related" as a matter of law based on the record before him. *See* App. 7; R.Doc. 23, at 7 ("At this point in the litigation, the Court finds that it cannot rule as a matter of law that each and every act of trademark infringement alleged in the Cisco Action is 'related' to an act of trademark infringement that occurred prior to the Retroactive Date."); App. 14; R.Doc. 23, at 14 ("For these reasons, the Court cannot conclude – based on the allegations in the Cisco complaint and the facts made available to Travelers – that a jury must find that *every* act of

18

trademark infringement alleged in the Cisco complaint is 'related' to an act of infringement that occurred prior to the Retroactive Date.").

Accordingly, the district court properly denied Travelers' Rule 12(b)(6) motion to dismiss and such ruling should be affirmed.

### C. Infringement Allegations Not Related as a Matter of Law

#### 1. "Related" Requires More than "Same Claim Same Parties"

Minnesota courts have rejected a strict or literal interpretation of "related" which would in essence render claims or allegation having any commonality related.[7] *Am. Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas. Co.*, 551 N.W.2d 224, 231 (Minn. 1996) (determining that acts are "related" for purpose of insurance coverage if they "are connected by time, place, opportunity, pattern, and most importantly, method or modus operandi"); *see also UnitedHealth*, (rejecting literal interpretation of "related" because "all claims for which United seeks indemnity from an insurer have at least one. . .common fact or circumstance").

In *American Commerce*, the Minnesota Supreme Court properly held similar claims of embezzlement involving the same employee, during the same time period,

---

[7] As noted by the district court, even Travelers acknowledges that applying the definition of "related" literally would result in absurd results. App. 8; R.Doc. 23, at 8 ("[E]very claim that any litigant has ever made against Dexon is 'linked' by the 'fact' that the claims were made against Dexon, and yet Travelers concedes that every claim ever made against Dexon is not "related" to every other claim ever made against Dexon.").

Appellate Case: 23-1328     Page: 26     Date Filed: 06/27/2023 Entry ID: 5290364

and victimizing the same employer, were *not* related. 551 N.W.2d 224, 231 (Minn. 1996). Because the employee used different methods of embezzlement, the claims were not "connected by time, place, opportunity, pattern, and, most importantly, method or modus operandi." *Id.*

Likewise, Cisco's pre-policy and policy period allegations against Dexon are not "connected by time, place, opportunity [or] pattern." Rather, the allegations involve separate transactions, occurring several years apart, involving different customers and different Cisco products. Significantly, the products in questions were supplied by completely different suppliers for whom Dexon had no reason to be suspect. Dexon had been doing business with one such supplier for 20+ years without incident. The district court correctly recognized that such facts made it "highly likely"—or "arguable"—that at least certain of the alleged acts of infringement were *not* related. Judge Schiltz explained (App. 9; R.Doc. 23, at 9):

> A second problem for Travelers is that Dexon informed it of facts that, if true, would make it highly likely that at least some of the alleged acts of infringement . . .are not related to any other acts of infringement. . .Dexon informed Travelers that Dexon acquires products from thousands of suppliers. Dexon further explained that the allegedly counterfeit products cited by Cisco in its complaint were (1) different products; (2) that had been purchased at different times; (3) from different sources (4) by different Dexon employees and then (5) sold to different customers. . .Dexon also informed Cisco that Dexon had never received a warning or complaint from Cisco about any of the suppliers from whom Dexon purchased the products. . .at issue. . .and Dexon had no other reason to believe that any of those sellers was providing counterfeit product. . .Finally Dexon told Cisco that it had worked with some of the supplier of the allegedly counterfeit Cisco products for

20

more than 20 years without ever having reason to believe that those long-time suppliers had provided counterfeit products.

Federal courts applying Minnesota law have expressly rejected attempts to improperly expand the scope of "related" laid out in *American Commerce* and adopted below. In *Nat'l Union Ins. Co. of Pittsburgh, Pennsylvania v. Holmes & Graven*, the court rejected an attempt to find claims "related" because, as here, they involved the same claims and parties. 23 F. Supp. 2d 1057, 1070-71 (D. Minn. 1998). *Nat'l Union* involved negligence claims against the same law firm arising out of work performed in connection with the same legal instrument; namely, alleged negligence in both drafting and enforcing the legal instrument at trial. *Id.* The court properly determined that although the claims had certain commonalities —namely, that the underlying acts were those of the same firm and were committed in the context of a single commercial venture—they were separate/independent acts and therefore not related for purpose of a "related acts" exclusion. *Id.*

## 2. Travelers' "Macro-Grouping" Inappropriate

Travelers argues Judge Schiltz's reliance on facts demonstrating Dexon is an innocent middleman reseller constitutes improper "micro-distinguishing." Appellant's Brief at 19-20. The Minnesota Supreme Court did caution against "micro-distinguishing" in *Am. Commerce*. 551 N.W.2d at 228. However, such warning was limited to arguments (at the summary judgment stage) that a dishonest employee's *undisputed intentional acts of embezzling money* via insurance

21

premiums and issuing unauthorized checks should be considered as seven 7 different acts due to minor differences in the methods utilized, including: 1) issuing unauthorized payroll checks, 2) issuing unauthorized petty cash checks; 3) filling in her own name as payee on customer checks; 4) accepting cash payment of premiums; 5) instructing customers to leave the payee line blank when writing their personal or cashier checks; 6) advising customers that cash payments could be accepted; and 7) instructing customers to pay in cash. *Id.* The Minnesota Supreme Court properly rejected such "micro-distinguishing." *Id.* The undisputed criminal embezzlement via minor differences in the method is not analogous to facts demonstrating that Dexon's alleged trademark infringement involved: 1) different customers; 2) different products; 3) purchased over multiple decades; 3) from multiple different reputable suppliers; 4) for which Dexon had no prior notice or warning; and 5) that represents a de minimis amount of Dexon's total sales.[8]

In fact, it is Travelers that is attempting the "same parties/same claims" type of macro-grouping that has been repeatedly rejected. In an analogous case directly on point, it was determined that a trademark infringement lawsuit was not related to

---

[8] Travelers ignores the fact the Minnesota Supreme Court ultimately concluded that separate acts committed as part of the undisputed ongoing criminal embezzlement scheme were *not* related because they constituted two different methods – fraudulent unauthorized checks and fraudulent acts relating to insurance premiums. *American Commerce*, 551 N.W.2d at 228.

Appellate Case: 23-1328     Page: 29     Date Filed: 06/27/2023 Entry ID: 5290364

prior trademark infringement claims because the similarities between the allegations, including "the same goal—to lure potential and existing customers from [the plaintiff]," as well as "deliberately causing confusion, mistake and deception by associating [the defendant] with [the Plaintiff] to benefit from [the Plaintiff's] well-known marks," were not enough to render claims related because "the focus of the interrelatedness inquiry is on the acts, not on the parties or the goals." *Connect Am. Holdings, LLC v. Arch Insurance Company*, 174 F. Supp. 3d 894, 902-03 (E.D. Penn. 2016) (determining that acts of trademark infringement not related).

Attempting to connect the independent and separate acts of alleged infringement, Travelers points to allegations in the Underlying Complaint that "Dexon refused to cooperate with Cisco in identifying the suppliers of the counterfeit products." Appellant's Brief at 3. Travelers fails to explain how refusing to voluntarily disclose sensitive trade secret information somehow renders subsequent sales "related." *Id.* Regardless, as explained below, Cisco has a history of harassing secondary market resellers like Dexon, including falsely labeling genuine products sold on the secondary market "counterfeit" solely because it was not procured via Cisco's authorized distribution channels.[9] Accordingly, any reluctance on Dexon's

---

[9] *See* Dexon's Answer to the Complaint, App. 212-216, ¶¶ 93-94, ¶¶ 110-113; R.Doc. 14-1, at 43-44, 47-48. While acknowledging it was irrelevant to his decision, Judge Schiltz also questioned Dexon's counsel about such allegations at the hearing. App. 331-333; R.Doc. 41 at 39-41.

Appellate Case: 23-1328     Page: 30     Date Filed: 06/27/2023 Entry ID: 5290364

part to voluntarily disclose its sensitive trade secret supplier information is understandable and does not constitute a "scheme" or render subsequent sales "related."[10]

### D.    **Travelers' Reliance on *Sletten* Misplaced**

Travelers argues the district court's decision contradicts this court's reasoning in *Sletten & Brettin Orthodontics, LLC v. Contintental Casualty Co.*, 782 F.3d 931 (8th Cir. 2015). Travelers is mistaken. *Sletten* involved an unambiguous exclusion for defamation committed with an intent to injure. *Id.* The underlying complaint unequivocally and unambiguously alleged that the insured intended to injure the plaintiff's reputation. *Id.* The district court found the exclusion did not preclude the insurer's duty to defend because the insured's liability for defamation did not hinge upon an intent to injure—specifically, the insured could be found liable for defamation irrespective of his intent to injure. *Id.* This court reversed,

---

[10] Travelers also argues, for the first time on appeal, that allegations in the underlying complaint Dexon "purchased and sold counterfeit Cisco products at prices below the Global List Price for genuine products" renders Dexon's separate and independent transactions related. Appellant's Brief at 3. This argument was not raised below and is therefore waived. *Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1139 (8th Cir. 2015) (argument raised for the first time on appeal waived). Regardless, Travelers again fails to explain how selling secondary market product below Cisco's inflated Global List Price renders different transactions related. As explained below, it is the very nature of the legal secondary market that allows resellers such as Dexon to offer genuine Cisco products at affordable prices well below Cisco's Global List Price. App. 212-216, ¶¶ 93-94, 110-113; R.Doc. 14-1, at 43-44, 47-48.

24

determining the application of the unambiguous exclusion and the insurer's duty to defend did not hinge upon the insurer's ultimate liability.[11]

Contrary to Travelers' argument, Judge Schiltz did not base his decision on the fact Dexon could be found liable even if Cisco failed to establish Dexon intentionally "schemed" to commit trademark infringement. Rather, as described in detail above, the district court rested on its determination that, consistent with well-established case law, he could not make the fact intensive "relatedness" determination as a matter of law at the Rule 12(b)(6) stage based on the current record.

In noting the absence of any "factual support in the complaint" for Cisco's claimed "scheme," the district court explained that the alleged "scheme" is "largely irrelevant to [Ciscso's] legal claims against Dexon." App. 13; R.Doc. 23, at 13. But

---

[11] Although not critical to the district court's decision, Dexon notes that, contrary to *Sletten*, several courts have refused to apply intentional act exclusions despite allegations of intentional conduct. *See Bridge Metal Indus., L.L.C. v. Travelers Indem. Co.*, 812 F. Supp. 2d 527, 545 (S.D.N.Y. 2011) ("The Court agrees that despite the allegations of intentional conduct by Plaintiffs, National's complaints asserted covered causes of actions for which Plaintiffs could have been found liable without any intentional conduct . . . . Thus, Defendant has failed to 'demonstrate that the allegations of the complaint can be interpreted only to exclude coverage' and it had a duty to defend Plaintiffs in the underlying lawsuits."), *aff'd sub nom. Bridge Metal Indus., LLC v. Travelers Indem. Co.*, 559 F. App'x 15 (2d Cir. 2014); *Allied Ins. Co. v. Bach*, No. 05-cv-5945, 2007 WL 627635, at *2 (N.D. Ill. Feb. 27, 2007) (determining that intentional conduct exclusion did not absolve insurer of duty to defend because trademark infringement by marketing of counterfeit good need not be willful to be actionable).

Appellate Case: 23-1328     Page: 32     Date Filed: 06/27/2023 Entry ID: 5290364

its decision was in no way based on such "irrelevance." *Id.* Rather, it was merely part of its overall discussion and description of the lack of definitive allegations in the Underlying Litigation rendering Dexon's separate and independent transactions "related."

At its heart, the district court's decision was a proper recognition of the fact that if the relevant information is ambiguous or unclear and may reasonably be interpreted to include coverage, there is a duty to defend. *See Prahm v. Rupp Const. Co.*, 277 N.W.2d 389, 391 (Minn. 1979) ("The facts available to us on the present record can be interpreted in two ways. . .Thus, the present case is not clearly within this exclusion."). Put another way, courts look to the details and the substance of the relevant information rather than a complainant's "artful pleading." Namely, Cisco's repeated use of the phrase "scheme" in the underlying complaint, in the absence of clear and definitive factual allegations consistent with such alleged "scheme," will not control the determination of "relatedness," especially in the face of directly contradictory facts known to the insurer. *See Cont'l Ins. Co. v. Daikin Applied Americas Inc.*, 998 F.3d 356, 361 (8th Cir. 2021) ("[S]o long as the allegations in an underlying complaint, liberally construed, 'implicate[]' [the insured's] liabilities, [the insurer]'s duty to defend is triggered in that underlying lawsuit."); *Freeman Investments, L.P. v. Pacific Life Ins. Co.*, 704 F.3d 1110 (9th Cir. 2013) (securities Litigation Uniform Standards Act's preclusion of state law class actions alleging

Appellate Case: 23-1328    Page: 33    Date Filed: 06/27/2023 Entry ID: 5290364

misrepresentation or fraud in connection with covered securities not applicable despite complaint alleging "numerous misrepresentations and omissions in furtherance of an inherently deceptive scheme. . .systematic concealment. . .and deceitful conduct"; courts "look to the substance of the allegations" and "plaintiffs cannot avoid preclusion 'through artful pleading that removes the covered words. . .but leaves in the covered concepts.'").

The district court properly determined that the claims alleged in the Underlying Litigation were "arguably" covered sufficient to trigger the duty to defend. This court should thus affirm the order denying Travelers' motion to dismiss.

## CONCLUSION

For the above-stated reasons, the district court's denial of Travelers' Rule 12(b)(6) motion to dismiss should be affirmed in its entirety.

DATED: June 27, 2023      **TAFT STETTINIUS & HOLLISTER LLP**

By: */s/Michael M. Lafeber*
    Michael M. Lafeber (#242871)
    Scott M. Flaherty (#0388354)
    O. Joseph Balthazor Jr. (#399093)
    2200 IDS Center, 80 South Eighth St.
    Minneapolis, MN 55402-2157
    (612) 977-8400
    mlafeber@taftlaw.com
    sflaherty@taftlaw.com
    jbalthazor@taftlaw.com

**ATTORNEYS FOR PLAINTIFF/APPELLEE DEXON COMPUTER, INC.**

27

## CERTIFICATE OF BRIEF LENGTH

The undersigned counsel for Appellee Dexon Computer, Inc. certifies that this brief complies with the requirements of Fed. R. App. P. 32(a)(7)(B) in that it is printed in 14 point, proportionately spaced typeface utilizing Microsoft Word 2016 and contains 6592 words, including headings, footnotes and quotations.

DATED: June 27, 2023

**TAFT STETTINIUS & HOLLISTER LLP**

By: */s/Michael M. Lafeber*
    Michael M. Lafeber (#242871)
    Scott M. Flaherty (#0388354)
    O. Joseph Balthazor Jr. (#399093)
    2200 IDS Center, 80 South Eighth St.
    Minneapolis, MN 55402-2157
    (612) 977-8400
    mlafeber@taftlaw.com
    sflaherty@taftlaw.com
    jbalthazor@taftlaw.com

**ATTORNEYS FOR PLAINTIFF/APPELLEE DEXON COMPUTER, INC.**

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 27, 2023, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit.

<u>*/s/ Michael M. Lafeber*</u>

Appellate Case: 23-1328    Page: 36    Date Filed: 06/27/2023 Entry ID: 5290364